UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RAYMOND SATTERFIELD, et al.,

            Plaintiff,

vs.

Case No.: 6:09-CV-1827-ORL-28DAB

CFI SALES & MARKETING, INC.,
CENTRAL FLORIDA INVESTMENTS,
INC. and WESTGATE RESORTS, INC.,

            Defendant.
_____/

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AND
STIPULATION FOR DISMISSAL WITH PREJUDICE**
(Incorporated memorandum of Law )

Plaintiffs, ASONTA BAKER, CAROLINA FORERO, DANIEL FORERO, VERONICA MAUROVICH, DENNIS PRANOUSKES and JAMES USHER ("Settlement class or Plaintiffs"), and Defendants, CFI SALES & MARKETING, INC.; CENTRAL FLORIDA INVESTMENTS, INC.; and WESTGATE RESORTS, INC. (collectively "Defendants" or "CFI"), through their undersigned counsel, pursuant to Rule 41(a)(1)(a) of the Federal Rules of Civil Procedure, hereby request this Court to approve the settlement reached by the parties and dismiss this case with prejudice.

**Relevant Facts Describing Factual and Legal Issues which served as the basis for the compromise reached by the Settlement Class and the Defendants**

1. On December 28, 2009, Plaintiff, RAYMOND SATTERFIELD, filed his Complaint (Doc. 1) against Defendants alleging failure to pay overtime wages in compliance with the Fair Labor Standards Act, 29 U.S.C. § 207, *et. seq.* ("FLSA").

1

2. Thereafter, another 25[1] individuals filed opt-in consents to join this action, including the settlement class comprised of the six individuals identified above. Specifically, these six individuals, as required by the Court, submitted Answers to Court's Interrogatories, setting forth an estimated amount of alleged overtime damages due to them based upon the information available to them at that time.

3. CFI pursued a counterclaim for breach of contract against a number of the Plaintiffs in this action, including some of those belonging to the settlement class, based on the written agreements executed by the parties. Plaintiffs were compensated by CFI on a commission basis for each "good" sale of a timeshare interest as defined by the terms of the agreement. The commission earned and due, if any, to each plaintiff was paid within a prescribed period after each sale, less a contractually agreed percentage of such commission that was allocated to a "reserve account." Such commissions, net of the reserve allocation, were paid to the plaintiffs shortly after the sale even though the timeshare purchaser paid only a small percentage of the total purchase price at closing. In other words, Defendants argued that Plaintiffs were advanced monies which were subject to be recouped as provided in the agreement.

4. CFI further argued that once the plaintiffs were no longer employed by CFI, all transactions for which they received a commission were subject to charge backs if the customer failed to make six timely and consecutive monthly payments as required by the agreement. Hence, after plaintiffs were discharged, each sale they made is so evaluated for the timeliness and frequency of the payments of the purchase money mortgage and the reserve account appropriately reconciled. Should a timeshare purchaser default – fail or refuse to make the

---

[1] This Motion only seeks the approval of settlement reached with the six individuals identified in this Motion and not the remaining Plaintiffs. The remaining Plaintiffs- with the exception of one person- are represented by different

required payments than the amount of the advance *already paid and received by* the plaintiffs was charged against the balance of the reserve (commonly referred to as a "chargeback").  Each such defaulted sale resulted in a chargeback until the reserve balance was exhausted.  However, CFI contends that Plaintiffs are responsible for all "chargebacks" which exceed the reserve amounts.  Accordingly, each Plaintiff was overpaid, per the Defendant, having received payments from Defendants that exceeded the amount of commissions actually earned and payable.

5. CFI also challenged the accuracy of each of the plaintiff's overtime estimates based on records available for each Plaintiff.

6. On February 17, 2011, the parties conducted mediation before Jill S. Schwartz, Esq.  The parties disputed liability, the estimated of number of overtime hours claimed, and the time periods in which some of the overtime was being claimed.  CFI in particular compared Plaintiffs' overtime damages to its actual attendance and other compensation records which refuted some basic core assertions by the Plaintiffs.  Likewise, CFI also addressed the potential overpayment to Plaintiff based on the breach of contract which they claimed would have precluded any recovery for most of the class.  After exhaustive discussions, a settlement was reached by six of the Plaintiffs indentified above as memorialized in Exhibit A.  The sixth agreement was reached after follow up conversations between counsel based on deposition testimony from one of the Plaintiffs.

7. While the parties engaged in discussions regarding attorney's fee and costs no settlement was reached.  The parties have agreed to submit the issue of attorney's fees and costs to the Court for the determination of an amount to be awarded.[2]

---

counsel than the Settlement Class.
[2] Counsel for the Plaintiffs will file a separate Motion for Attorney's Fees and Costs.

3

8. The Parties had a *bona fide* dispute which they have opted to resolve by **full mutual release** to avoid costs and uncertainty associated with continued litigation and trial. The settlement class and CFI have been ably represented by counsel throughout the litigation up to and including settlement negotiations.

9. The settlement entered into by the settlement class and CFI was an arms-length compromise unaffected by collusion.

10. This action involves issues of moderate complexity in terms of the amount of damages sought and the overpayment claimed by the Defendants.

11. Counsel for the settlement Class agrees that the estimates provided by each of the settlement class Plaintiffs in their Answers to Court's Interrogatories ultimately were shown to be overstated as they were provided without the benefit of any payroll records from the Defendants. Consequently, these initial damages failed to account for the cyclical nature of Defendant's business. During discovery it was revealed that Defendants' "high season" is from March until August, and late November until the end of December each year. The estimates provided by the settlement class failed to account time where no overtime wages could be earned, such as vacations, sick days or any other time off they may have received during their employment, and they further assumed that every day was worked, which the records showed not to be correct.

12. Two significant factors were taken into consideration by counsel for the settlement class before the instant settlements were reached. First, public records- including media reports- show that Defendants have suffered serious financial setbacks which impact the ability to recoup damages in the future. Second, Defendants have **guaranteed** payment to the Settlement Class in this case, unlike other pending litigation. Settlement funds have been placed in escrow and will be distributed to each of the six members of the settlement class after

4

approval of this Motion by the Court.

13. This Court should also note that while counsel has secured payment for the Plaintiffs, the same has not occurred for attorney's fees and costs. This issue remains pending and there is no guarantee that counsel will receive payment of attorney's fees and costs incurred in this litigation, irrespective of the Court's award. Thus, the settlement class is guaranteed a recovery while the undersigned's Law Firm is not -- even though expenditures of attorney's fees, costs and mediation fees have been made in this case.

14. The settlements reached for each of the respective members of the settlement class is fair and reasonable resolution of a *bona fide* dispute and represents a full release of all claims.

### MEMORANDUM OF LAW

**A. Standard of Review.**

Pursuant to the case law of this Circuit, judicial review and approval of a tentative FLSA settlement is necessary to give it final and binding effect. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor,* 679 F.2d 1350(11th Cir. 1982). As the Eleventh Circuit held in *Lynn*:

> "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them….The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* at 352-53.

Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a

reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. In determining whether the settlement is fair and reasonable the Court should consider the following factors:

（1）　the existence of fraud or collusion behind the settlement:
（2）　the complexity, expense, and likely duration of the litigation;
（3）　the stage of the proceedings and the amount of discovery completed
（4）　the probability of plaintiffs success on the merits:
（5）　the range of possible recovery; and
（6）　the opinions of the counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.,* 18 F.3d 1527. 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.,* No. 6:05-cv-592-Orl-22JGG, 2007 U.S. Dist. LEXIS 10287, at *2-3, (M.D. Fla. Jan. 8, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton,* 2007 U.S. Dist. LEXIS at * 2-3.

**B.     All of the Relevant Criteria Support Final Approval of the Settlement.**

Courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to the plaintiff seemed fair. *See Helms v. Central Fla. Reg. Hosp.,* No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994, at *11-12 (M.D. Fla. Dec. 21, 2006). Here, each Party was independently represented by counsel with experience in litigating claims under the FLSA. Each counsel was obligated to, and did, vigorously represent their clients' rights. Based on the amounts to be paid to Plaintiffs, it is clear that there was no fraud or collusion.

The probability of success on the merits, and the complexity, expense, and length of future litigation also militate in favor of this settlement. If the Parties continued to litigate this matter, they would be forced to engage in costly litigation which, in counsel for Plaintiffs'

opinion, would result in Defendants incurring unnecessary liability for further attorney's fees and cost in this matter as well as the entry of a Judgment that could result in no recovery for the settlement class. In fact, this very scenario is faced by the remaining 19 individuals who did not reach settlement agreements with the Defendants and remain part of this action. The resolution of the matter with the settlement class provides certainty for them and the Defendants as it relates to their particular claims. This settlement, therefore, is a reasonable means for all relevant Parties to minimize future risks and litigation costs and provide Plaintiffs compensation for the overtime work they performed.

Indeed, a sister court found similar settlements based on similar circumstances to be fair as defined by *Lynn*. *SeeChang, Ruth v. CFI Sales & Marketing, Inc., et al.*, Case No.: 6:09-CV-2164-ORL-28DAB). The same outcome is warranted here.

## CONCLUSION

The settlement terms are fair, reasonable and adequate. Accordingly, the Parties respectfully request that the Court grant this Joint Motion for Approval of the Settlement and Motion for Dismissal with Prejudice and enter a Final Order of Dismissal in this action.

WHEREFORE, Plaintiffs, ASONTA BAKER, CAROLINA FORERO, DANIEL FORERO, VERONICA MAUROVICH, DENNIS PRANOUSKES and JAMES USHER and Defendants, CFI SALES & MARKETING, INC.; CENTRAL FLORIDA INVESTMENTS, INC.; and WESTGATE RESORTS, INC., respectfully request that this Honorable Court enter an Order (i) GRANTING this Motion; (ii) APPROVING the settlement of Settlement class claims under the Fair Labor Standards Act; (iii) DISMISSING this case with prejudice as to the Settlement class; and (iv) ORDERING such further relief as the Court deems appropriate.

Dated this 19th day of April, 2011.

| | |
|---|---|
| BUDGEN LAW GROUP<br>400 North Bumby Avenue<br>Orlando, Florida 32803<br>Telephone: (407) 481-2888<br>Facsimile: (407) 313-1119<br><br>By:  *s/ L. Todd Budgen*<br>      L. Todd Budgen<br>      Florida Bar No. 0296960<br>      tbudgen@mywagefirm.com<br><br>Attorneys for Plaintiffs, ASONTA BAKER, CAROLINA FORERO, DANIEL FORERO, VERONICA MAUROVICH, DENNIS PRANOUSKES and JAMES USHER | GREENSPOON MARDER, P.A.<br>201 East Pine Street, Suite 500<br>Orlando, Florida 32801<br>Telephone:    (407) 425-6559<br>Facsimile:     (407) 422-6583<br><br>By:  *s/Myrna Maysonet*<br>      MYRNA MAYSONET, ESQ.<br>      Florida Bar No. 0429650<br>      Myrna.maysonet@gmlaw.com<br><br>      Richard W. Epstein, Esq.<br>      Florida Bar No. 229091<br>      repstein@.com<br><br>Attorneys for Defendants, CFI SALES & MARKETING, INC.; CENTRAL FLORIDA INVESTMENTS, INC.; and WESTGATE RESORTS, INC. |