**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RAYMOND SATTERFIELD, AND**
**OTHERS SIMILARLY SITUATED,**

                **Plaintiffs,**

**-vs-**                                                     **Case No. 6:09-cv-1827-Orl-28DAB**

**CFI SALES & MARKETING, INC.,**
**CENTRAL FLORIDA INVESTMENTS,**
**INC., WESTGATE RESORTS, INC.,**

                **Defendants.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **JOINT MOTION TO APPROVE SETTLEMENT AND STIPULATION FOR DISMISSAL WITH PREJUDICE (Doc. No. 133)**
>
> **FILED:** **June 14, 2011**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

The matter has been referred by the District Judge to determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354-55 (11th Cir. 1982). Plaintiff Vicente Orellano, as part of a larger group of twenty-five Plaintiffs, mediated his claims with a mediator. Although he did not settle his claims on the day of the mediation, following his counsel's withdrawal from representation

of all but six Plaintiffs (*see* Doc. 112), Orellano continued to negotiate with Defendant as an extension of the mediation discussions; eventually he reached a settlement with Defendants. The parties now jointly seek approval of their settlement and stipulation of dismissal with prejudice. Doc. 133.

If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* at 1353 (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 928 n.8, 90 L.Ed. 1114).

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

Based on his responses to the Court's Interrogatories (Doc. 34), Plaintiff was employed by Defendants acting as a closing officer for timeshares from June 2007 to May 2008. Plaintiff sought compensation for 30 hours of overtime per week for 52 weeks per year, plus an equal amount in liquidated damages. Doc. No. 34. Defendants asserted counterclaims against all of the Plaintiffs

arising from "chargebacks" that Plaintiffs had earned for selling timeshares where the purchasers eventually defaulted on the payments.

Six other closing-officer Plaintiffs in this litigation reached similar settlements for similar closing officer work in the amounts of $1,000, $1,758, $2,000, $2,300, $2,500, and $6,500. Doc. 112. These amounts were determined to be "fair and reasonable resolutions of bona fide disputes" over FLSA issues (Doc. 112) based on the same issues as those raised in Orellano's case:

> Defendants counterclaimed for breach of contract against a number of the Plaintiffs, based on the written agreements executed by the parties, which allowed for "chargebacks" to Plaintiffs' commissions, a percentage of which was held in reserve. Commissions, net of the reserve, were paid to the Plaintiffs shortly after the sale even though the timeshare purchaser paid only a small percentage of the total purchase price at closing; once Plaintiffs were no longer employed by Defendants, all transactions for which they received a commission were subject to chargebacks if the customer failed to make six timely and consecutive monthly payments as required by the agreement. Where a timeshare purchaser defaulted, the amount of the advance already paid and received by Plaintiffs was charged against the balance of the reserve, until the reserve balance was exhausted. Defendants alleged that Plaintiffs were responsible for all "chargebacks" which exceed the reserve amounts and the Plaintiffs were overpaid having received payments from Defendants that exceeded the amount of commissions actually earned and payable. Defendants also challenged the accuracy of Plaintiffs' overtime estimates based on records available for each Plaintiff. Defendants further asserted that Plaintiffs were exempt from overtime under an exemption to the FLSA. Doc. No. 99.
>
> Counsel for the six Plaintiffs [Orellano's previous counsel] agreed that the estimates provided by each of the settling Plaintiffs in their Answers to Court's Interrogatories ultimately were shown to be overstated as they were provided without the benefit of any payroll records from the Defendants. Consequently, these initial damages failed to account for the cyclical nature of Defendant's business. During discovery it was revealed that Defendants' "high season" is from March until August, and late November until the end of December each year. The estimates provided by the settlement class failed to account time where no overtime wages could be earned, such as vacations, sick days or any other time off they may have received during their employment, and they further assumed that every day was worked, which the records showed not to be correct. In addition, two other factors were taken into consideration by Plaintiff's counsel before the instant settlements were reached. First, public records- including media reports- show that Defendants have suffered serious financial setbacks which impact the ability to recoup damages in the future. Second, Defendants have guaranteed payment to the Settlement Class in this case, unlike other pending

> litigation. Settlement funds have been placed in escrow and will be distributed to each of the six members of the settlement class after approval of these settlements by the Court. Thus, the settlements negotiated and reached by the Parties reflects a reasonable compromise of these several disputed issues, both legal and factual, and in consideration of the Defendants' financial status (as described by Plaintiff's counsel) at issue.

Doc. 112. The Report and Recommendation for the settlements of these six Plaintiffs' claims was adopted by the District Judge and the settlement was approved. Doc. 117. Mr. Orellano, though proceeding *pro se* at this juncture due to counsel's withdrawal from representation of the remaining nineteen Plaintiffs after a hearing on the matter, had the benefit of counsel's involvement in the case up until the time of the mediation. In fact, Orellano's former counsel, Mr. Budgen, represented at the status conference on April 21, 2011 that Orellano had signed a settlement agreement with Defendants, although Mr. Budgen no longer represented him. Doc. 112 n. 2. The settlement agreement presented to Orellano by Defendants was identical to the ones that the Court had since approved for the other six Plaintiffs discussed above. Doc. 133.

In the Joint Stipulation, the parties represent that "As conceded during Orellano's deposition testimony, the estimates provided by Orellano in his Answers to Court's Interrogatories ultimately were shown to be overstated as they were provided without the benefit of any payroll records from the Defendants. Consequently, these initial damages failed to account for the cyclical nature of Defendants' business. During discovery it was revealed that Defendants' "high season" is from March until August, and late November until the end of December each year. The estimates provided by the settlement class failed to account [for] time where no overtime wages could be earned, such as vacations, sick days or any other time off they may have received during their employment, and they further assumed that every day was worked, which the records showed not to be correct. Moreover, in Orellano's case, Orellano estimated that he had worked for approximately 52 weeks when he had

worked for only 35 weeks. Likewise, he wrongly estimated that he earned an average of $1,000 per week when his weekly compensation was less than that for a substantial number of weeks." Doc. 133 at 4.

Defendants have turned over the settlement funds to the office of Orellano's former counsel, Mr. Budgen's office, to hold in escrow until the approval of this Settlement. The parties also state that no fees will be provided to Mr. Budgen[1] with regard to this settlement after the point of his withdrawal, and all settlement funds (the full $2,000) will go to Orellano. Doc. 133.

It is **RECOMMENDED** that the settlement be accepted by the District Court as a "fair and reasonable resolution of a bona fide dispute" over FLSA issues.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 28, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[1] Because Mr. Budgen no longer represents Plaintiff and did not directly participate in the settlement, it is unclear whether he intends to file a motion for fees to be awarded for his prior representation of Orellano. At any rate, any award of fees would be separate from the settlement to Plaintiff.