# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RAYMOND SATTERFIELD, AND
OTHERS SIMILARLY SITUATED,**

      **Plaintiffs,**

**-vs-**                   **Case No. 6:09-cv-1827-Orl-28DAB**

**CFI SALES & MARKETING, INC.,
CENTRAL FLORIDA INVESTMENTS,
INC., WESTGATE RESORTS, INC.,**

      **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR ATTORNEY'S FEES AND COSTS (Doc. No. 216)** |
| **FILED:** | **June 7, 2012** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. ||
| **MOTION:** | **MOTION FOR ATTORNEY'S FEES AND COSTS (Doc. No. 218)** |
| **FILED:** | **June 7, 2012** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. ||

Plaintiffs sued Defendants for overtime allegedly due under the Fair Labor Standards Act ("FLSA"). Defendants responded by suing Plaintiffs for breach of contract. All but six of the twenty-nine Plaintiffs settled their claims and a group of the last sixteen to settle have agreed to allow the Court to determine the amount of attorney's fees and costs.

## I. Background

On October 28, 2009, Plaintiff Raymond Satterfield, represented at that time by Leigh Budgen, Esq., filed a collective action complaint[1] for unpaid overtime wages pursuant to the Fair Labor Standards Act (the "FLSA"). Doc. 1. In total, 28 individuals joined Plaintiff as opt-in plaintiffs; all were "closing officers" who worked in Florida at various timeshare resorts operated by CFI. Docs. 12-13, 23-24, 27, 30, 41, 53-54. On February 17, 2011, the parties conducted mediation where they were represented by Mr. Budgen; six Plaintiffs[2] settled their claims at mediation, and fees and costs have already been awarded to these Plaintiffs. *See* Docs. 117, 130.

However, during the mediation on February 17, 2011, irreconcilable differences arose between sixteen other Plaintiffs and counsel; Mr. Budgen subsequently filed a Motion to Withdraw as counsel for: Ernesto Aviles, Jason Boyd, Ernesto Briera, Bethzaida Caballero, Johanna Cardile, Graciela Everest, Edison Forero, Georgina Gandarilla, Javier Herrera, Monique Johnson, Jorge Periera, Fraya Petersen, Carlos Rodriguez, Raymond Satterfield, Elizabeth Singer, and Andrew Sugrim (the "Sixteen Plaintiffs"). Over the course of the litigation, seven other Plaintiffs withdrew, settled, or dismissed their claims[3], leaving these Sixteen Plaintiffs with active claims. Following an *ex parte* hearing, the Court allowed Mr. Budgen to withdraw. Doc. 97. On March 18, 2011, CFI filed counterclaims for breach of contract against several of the remaining Plaintiffs. Doc. 99.

On March 31, 2011, Richard Smith, Esq., filed a Notice of Appearance, representing the Sixteen Plaintiffs. Doc. 100. On April 8, 2011, a week after Mr. Smith began his representation of Plaintiffs, he filed unopposed motions to extend or stay deadlines to address pleadings submitted by

---

[1] Plaintiff never sought collective action status.

[2] Asonta Baker, Carolina Forero, Daniel Forero, Veronica Maurovich, Vicente Orellana, Dennis Pranouskes, and James Usher.

[3] Three Plaintiffs, Anthony Berly, Cecilia Perrales, and Barbara Silva withdrew their claims. The claims of Ana Carreno and Brenda Camacho were voluntarily dismissed. Doc. 137. The claims of Roberto Santana were dismissed as a sanction. Doc. 131. Vincent Orellana settled his claim, which was approved by the Court. Docs. 133, 139.

-2-

Defendants. Docs. 103, 104, 105. Plaintiffs and Defendants participated in additional discovery, including 17 depositions (in addition to prior ones) addressing Plaintiffs' overtime claims, and CFI's breach of contract counterclaims.

On September 6, 2011, each side filed motions for partial summary judgment. Docs. 152, 155. On September 13, 2011, a second mediation conference was held, this time with Mr. Smith representing the remaining Sixteen Plaintiffs. The mediation resulted in four Plaintiffs settling their claims against Defendants; however, settlement agreements could not be reached for the remaining twelve Plaintiffs and their overtime claims and Defendants' counterclaims were set for trial to begin in January 2012. In December 2011, the parties filed a joint motion to stay the case until March 2012, which was granted. Doc. 181. On February 28, 2012, the District Judge partially granted the parties' cross motions for summary judgment, narrowing the issues for trial. Doc. 196.

In early March 2012, nine of the twelve remaining Plaintiffs settled their overtime claims with Defendants; the last three Plaintiffs participated in a settlement conference held by the Court and on March 9, 2012, also settled their overtime claims. As part of each of the Sixteen Plaintiffs' settlement agreements, the parties agreed to let the Court to determine the amount of reasonable attorney's fees to be awarded, and the amounts sought are set forth in the charts *infra*.

## II.    Analysis[4]

In suits to recover unpaid minimum wages or unpaid overtime wages, the FLSA mandates that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). This provision has been interpreted to mean that "fee awards [are] mandatory for prevailing plaintiffs." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985); *see also Shelton v.*

---

[4]Magistrate Judge Kelly has entered Reports and Recommendations in other cases brought by employees of Defendants CFI and Westgate. *See Edwards v. CFI Sales & Marketing, Inc.*, Case No. 09-234-28GJK; *Andriello v. CFI Sales & Marketing, Inc.*, Case No. 6:09-cv-208-36GJK. The Court adopts Judge Kelly's statement of the law – the lodestar formula – used to calculate the fees in FLSA cases; this is also the methodology the Court has applied in other FLSA cases.

...

*Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases.").

In the Eleventh Circuit, reasonableness is generally determined using the familiar lodestar approach. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rate and hours expended are reasonable. *See Norman v. Housing Auth. of the City Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). In making such determinations, the Court is an expert on the issues of the prevailing market's reasonable hourly rates for similar work and hours expended. *Norman*, 836 F.2d at 1303; *Loranger v. Stierheim*, 10 F.3d 776, 782 (11th Cir. 1994).

Having set forth these standards, the United States Supreme Court, however, expects that a request for attorney's fees will not result in a second major litigation, and that ideally the litigants will settle the amount of the fee. *Hensley v. Eckerhart*, 461 U.S. 434, 437 (1983); *Thompson v. Pharmacy Corp. of America, Inc.*, 334 F.3d 1242, 1245 (11th Cir. 2003)(Lawyers should not be compensated for turning the litigation about attorney's fees into a "second major litigation."). Justices Brennan, Marshall, Blackmun, and Stevens characterized post-judgment litigation over attorneys fees and related appeals as "one of the least socially productive types of litigation imaginable." *Id.* at 442, 103 S.Ct. 1933 (concurring in part and dissenting in part); *Association for Disabled Americans, Inc. v. Integra Resort Management, Inc.*, 385 F.Supp.2d 1272, 1286 (M.D. Fla. 2005). The Court now turns to the calculation of a reasonable fee.

### A. Reasonable Hourly Rate

To meet the burden of establishing the reasonableness of the hourly rate(s) requested, the moving party generally must produce "satisfactory evidence" that the hourly rate being requested is

in line with "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Id.* at 1299. Defendants do not dispute the reasonableness of the hourly rates requested in the case. Doc. 216, 223. Moreover, the rates are consistent with those previously awarded for counsel representing Plaintiffs against CFI in other overtime cases. *See* Doc. 216-2.

### B. Reasonable Hours

When submitting the hours reasonably expended, the moving party must exercise "billing judgment." *Hensley*, 461 U.S. at 434. This requires the moving party to exclude hours that are "redundant, excessive, or otherwise unnecessary." *Id.* The court will excise redundant, excessive or unnecessary hours when a party fails to do so. *See Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). In proving reasonable hours, a movant "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so [the court] can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. A party opposing a fee application should also submit objections and proof that are "specific and reasonably precise" concerning those hours that should be excluded. *Barnes*, 168 F.3d at 428. A fee opponent's failure to explain with specificity the particular hours he views as unnecessary or duplicative is generally fatal. *Gray v. Lockheed Aeronautical Systems Co.*, 125 F.3d 1387 (11th Cir. 1997).

### C. Amounts sought by Plaintiffs

As set forth in the charts below, counsel for Plaintiffs have provided detailed affidavits and time sheets showing the individual who performed each task, the hourly rate for that individual, a description of each task, and the amount of time expended. Docs. 216, 218.

| Attorney/Paralegal | Hours | Rate | Fees |
|---|---|---|---|
| L. Todd Budgen, Esq. | 38.6 | $275 | $10,615 |
| Senior paralegal | 3.5 | $105 | $368 |
| Paralegal | 64.1 | $95 | $6,090 |
| **Total** | | | **$17,072** |

Doc. 218.  Mr. Budgen requests he be awarded a total of $17,072 in attorneys' fees for work[5] done by his firm before he withdrew from representation from the Sixteen Plaintiffs.

| Attorney/Paralegal | Hours | Rate | Fees |
|---|---|---|---|
| Richard W. Smith, Esq. | 353.40 | $275 | $97,185 |
| Stephanie B. Preston, Esq. | 41.80 | $275 | $11,495 |
| Eric R. Elms, Esq. | 121.6 | $150 | $18,240 |
| Joseph R. Coker, Esq. | 1.7 | $150 | $255 |
| Michael M. Brownlee, Esq. | 8.10 | $150 | $1,215 |
| Paralegals (3) | 251.6 | $95 | $23,902 |
| **Total** | **778.2** | | **$152,292** |

Doc. 216.  Plaintiffs additionally request a total of $152,292[6] in attorneys' fees for work done by Mr. Smith and his firm in representing the Sixteen Plaintiffs.

The final settlement agreements were reached two and a half years after the case was filed and on the eve of trial; discovery had been completed, and summary judgment motions had been filed by both sides.  The work done on this case prior to reaching the final Sixteen Plaintiffs' settlement agreements includes: the filing of the complaint; complying with scheduling orders; filing notices to opt-in and responding to the Court's interrogatories; Defendants filing of verified summaries; participation in two mediations and a settlement conference; filing motions for summary judgment;

---

[5]As Mr. Budgen notes, Defendants are not opposed to the principle that he should receive some fees for time incurred before his withdrawal from the case.

[6]In the Reply, Smith withdrew 26.4 hours (multiplied by $275/hour) from the request, reducing the total request to $145,032.  His concession on the 26.4 hours is discussed below.

-6-

preparing for trial; and negotiating the final settlements. As part of the extensive discovery conducted in the case, most of the Plaintiffs were deposed, and the case produced 17 depositions (the majority of which were taken by the Defendants), thousands of pages of discovery, and 214 docket entries encompassing multiple motions for summary judgment, multiple discovery motions, and multiple pleadings requiring responses.

Defendants have filed an Omnibus Memorandum in Opposition to Plaintiffs' Motions for attorney's fees and costs. Doc. 223. Their basic arguments are that several categories of time, which comprise a significant portion of the fees sought, are not recoverable: 1) time spent by Plaintiffs' former attorney, Mr. Budgen, withdrawing from this case; 2) time spent by Plaintiffs' three "new" attorneys and staff members from Mr. Smith's firm "learning" the case after Mr. Budgen withdrew; and, 3) duplicative, excessive, redundant, clerical, or other work unrelated to the advancement of the case. Doc. 223. Defendants also argue that a significant reduction to the lodestar – they suggest 70% – is required to account for what they characterize as Plaintiffs' "abject failure to recover anything close to the million dollar-plus in damages sought." Doc. 223 at 2.

### D. Fees Will Not Be Reduced Across the Board for "Limited Success"

Defendants argue that Plaintiffs' fee recovery should be reduced by an overall deduction to the lodestar amount by 70% for Plaintiffs' failure to recover amounts approximating what they (and other dismissed Plaintiffs) initially sought to recover for overtime claims and liquidated damages amounts. Budgen and Smith both argue that Defendants mischaracterize the amount and extent of the damages sought, which should be limited to the Sixteen Plaintiffs whose settlements are being considered in their Fee Motions.

The United States Supreme Court has stated that the degree of success achieved is a "crucial factor that district courts should consider carefully in determining the amount of fees to be awarded." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). "When a district court finds the numbers of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or

-7-

Case 6:09-cv-01827-JA-DAB Document 235 Filed 12/18/12 Page 8 of 19 PageID 2916

it may reduce the requested hours with an across-the-board-cut." *Bivins v. Wrap it Up*, Inc, 548 F.3d 1348, 1350 (11 t h Cir. 2008). Thus, a Court has the discretion to provide "an across-board cut" in the number of hours claimed if it concludes that the number of hours claimed is excessive. *Galdames v. N&D Inv. Corp.*, 432 Fed.Appx. 801, 806 (11th Cir. June 23, 2011) (unpublished) (citing *Bivins*, 548 F.3d at 1350).

"As an alternative or in addition to adjusting the number of hours used to calculate the lodestar, the Court may apply an after-the-fact reduction of the lodestar where the Plaintiff achieved only partial or limited success, and this is true 'even where the Plaintiffs' claims are interrelated, non-frivolous and raised in good faith.'" *Brandt v. Magnificent Quality Florals Corp.*, 2011 WL 4625379 at *11-12 (S.D. Fla. Sept. 30, 2011) (quoting *Hensley*, 461 U.S. at 436). If the Court makes such an after-the-fact reduction in the lodestar based upon limited success, it is not required to engage in an hour-by-hour analysis so long as the Court provides a clear explanation for the reduction. *Loranger*, 10 F.3d at 783. However, "[w]hile the nature of the results obtained may result in an upward or downward adjustment of the lodestar, '[f]ee awards should not simply be proportionate to the results obtained,' especially in the context of FLSA cases, where it is not uncommon for fee awards to exceed the Plaintiff's recovery in order to ensure that individuals with relatively small claims can obtain representation necessary to enforce their rights." *Brandt v. Magnificent Quality Florals Corp.*, 2011 WL 4625379 at *12 (S.D. Fla. Sept. 30, 2011). Thus, while some reduction in the lodestar is appropriate to account for the very limited results obtained, because of the nature of FLSA cases, the reduction should not be proportionate to Plaintiffs' recovery. *Id.*

In one of the cases cited by Defendants in support of a reduction for Plaintiff's partial success on the merits, *Andriello v. CFI Sales & Marketing, Inc.*, Case No. 6:09-cv-208-Orl-35GJK (M.D. Fla. 2012), Judge Kelly found that Plaintiffs had achieved a very limited success, where, of the 43% of Plaintiffs (68 of 158) who had actually prevailed in the case, these plaintiffs had received only 3% of the damages they initially claimed. Rather than apply an hour-by-hour analysis to the lengthy fee

filings, Judge Kelly recommended that the District Court award Plaintiffs fees representing an after-the-fact reduction of seventy percent of the lodestar. Doc. 340 (citing *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313, 1326 (M.D. Fla. 2001) (limited monetary recovery of only $21,000 in unpaid overtime wages for collective action class resulted in a 67% reduction in lodestar); *Brandt v. Magnificent Quality Florals Corp.*, 2011 WL 4625379 at *12-13 (S.D. Fla. Sept. 30, 2011) (2.1% recovery justified a 70% reduction in the lodestar); *Gary v. Health Care Services, Inc.*, 744 F.Supp. 277, 278-79 (M.D. Ga. 1990) (5.1% recovery justified a 60% reduction in lodestar).

Here, the Sixteen Plaintiffs have reached settlements very similar in amount and percentage to other FLSA plaintiffs the Court has seen over the last several years. In many cases, Plaintiffs answer the Court's standard interrogatories as to their damages by setting forth amounts that are overly optimistic, include vacation weeks, weeks with sick time for which they would not receive overtime, and are estimated clearly without the benefit of their time records. Several of the Sixteen Plaintiffs originally claimed audacious six-figure damages amounts for a three year period ($106,985; $158,128; and $145,898), based on alleged overtime of *30 hours per week*, week in and week out, for three years. *See*, e.g., Doc. 29-1, 60-1, 64-1. In similar FLSA cases among the hundreds that the Court has adjudicated, once the time records are received, and with the benefit of counsel's FLSA expertise, such plaintiffs' damages calculations are substantially reduced to more realistic and supportable amounts based on the time records. Mr. Smith contends that is what happened in this case; the end result is that the total settlement amount for the Sixteen Plaintiffs equates to 39% recovery of the claimed overtime wages. Doc. 229 at 2. The chart below lists the individual settlement amounts for each of the Sixteen Plaintiffs who are currently seeking fees.

| Plaintiff[7] | OT in Resp. to Ct. Interrogs | Revised Amt Claimed-JPS[8] | Settlement Amounts |
|---|---|---|---|
| Jason Boyd | $49,500 | $42,328 | $13,750 |
| Ernesto Briera | $53,493 | $40,791 | $13,500 |
| Bethzaida Caballero | $79,064 | $22,427 | $15,000 |
| Johanna Cardile | $28,288 | N/A | $4,500 |
| Graciela Everest | $7,464 | N/A | $1,500 |
| Georgina Gandarilla | $49,500 | $7,550 | $5,000 |
| Javier Herrera | $33,000 | $17,612 | $6,750 |
| Monique Johnson | $15,460 | $12,746 | $5,000 |
| Fraya Petersen | $72,949 | $50,896 | $15,000 |
| Carlos Rodriguez | $41,496 | $37,653 | $17,500 |
| Raymond Satterfield | $32,160 | $31,144 | $17,500 |
| Elizabeth Singer | $13,000 | $7,352 | $5,000 |
| Ernesto Aviles | $15,271 | $17,805 | $5,000 |
| Edison Forero | $30,874 | $18,739 | $7,000 |
| Jorge Pereira | $12,766 | N/A | $8,000 |
| Andrew Sugrim | $32,911 | N/A | $11,000 |
| **TOTAL** | **$567,194** | **$388,473** | **$151,000** |

Plaintiffs each agreed to settle for various percentages of the amounts they revised when completing the Joint Pretrial Statement; four Plaintiffs settled before the JPS was completed and their Answers to the Court's Interrogatories are compared to the Settlement Amount (indicated by N/A in the Revised Amount column). The average settlement amounts for the Sixteen Plaintiffs ranged between 16% and 66% of the revised amounts of overtime damages sought by the Plaintiffs. *See* Doc.

---

[7]Although Defendants' arguments included the amounts from those Plaintiffs who ultimately dismissed, the Court does not include the amounts of their claims, but considers their claims in the context of the overall number of claims which were pursued during the course of the litigation.

[8]Amounts listed for 12 of 16 Plaintiffs in the Joint Pretrial Statement. Doc. 171. Four Plaintiff settlement prior to the filing of the Joint Pretrial Statement, so the amounts in their original Answers to Court Interrogatories were used.

230. Of the twenty-nine original Plaintiffs, three subsequently withdrew their claims, two voluntarily dismissed, and one's claim was dismissed as a sanction.

The settlements of these Sixteen Plaintiffs are commensurate with the range of FLSA settlements, with a few at the higher end of the range, of the typical FLSA recoveries the Court has seen over the past several years. Moreover, unlike in *Andriello*, there were only a few Plaintiffs whose claims were dismissed (two voluntarily) and nothing like 57% of the total plaintiffs who dismissed in *Andriello*.

To the extent Defendants seek an across-the-board reduction in Plaintiffs' fee request for "limited" success, such a reduction is not appropriate here. The Court now turns to Defendants' arguments with regard to the particular categories or time and individual time entries.

### E. Certain Categories of Time Will Be Excluded

Defendants argue under the circumstances of this straightforward FLSA case, there was overstaffing which led to redundant time between six different attorneys and four different paralegals who billed a total of 884.6 hours in approximately 900 time entries. Mr. Budgen's firm had three timekeepers: attorney L. Todd Budgen, and paralegals Jon Rankin and Becki Rodak. Mr. Smith's firm utilized eight timekeepers: attorneys Richard W. Smith, Stephanie B. Preston, Eric R. Elms, Joseph R. Coker, and Michael M. Brownlee, and paralegals Diane Fuller, Jeannie Orkin, and Debra Drake. Defendants also argue that several categories of time are not recoverable, including time spent by Attorney Budgen withdrawing from this case; time for work done on an amended complaint that was never filed and an unsuccessful Motion to Dismiss Defendants' counterclaim, which relitigated a position contrary to the one Plaintiff's previous counsel had taken; for Plaintiffs responding to Motions for Sanctions filed by Defendants and granted by the Court; for "clerical work" billed by paralegals; for Plaintiffs obtaining extensions of time to respond to various deadlines; and for work done relating to Jason Boyd's bankruptcy.

Mr. Smith and Mr. Budgen have each filed a helpful Reply on behalf of Plaintiffs, responding to distinct arguments Defendants made on their respective time entries. Docs. 229, 233. As an initial matter, Mr. Smith concedes that 26.4 hours spent drafting the unfiled amended complaint should not be reimbursed and withdraws that request valued at $7,260. Doc. 229 at 6. Mr. Budgen concedes that the 7.3 hours spent handling issues related to the withdrawal should be deducted; he agrees that 1.3 hours of duplicative time entries; 2 hours of work done for Plaintiff Santana (whose claims were dismissed); and 0.9 hours of "excessive" time are also not compensable. Doc. 233 at 3, 5. Mr. Smith does not specifically address the time sought to be excluded by Defendants for Plaintiffs obtaining extensions of time to respond to various deadlines (1.5 hours); or for work done relating to Defendant Jason Boyd's bankruptcy (2 hours). These categories are clearly not reimbursable under the FLSA, and will be excluded. The remaining disputed categories of issues are addressed in turn.

**1. Duplicative, Redundant, Excessive, or Clerical Time Entries**

Defendants argue that the counsel for Plaintiffs' hours should be reduced for duplicative work done as a result of the substitution of Smith's firm for Budgen's firm as Plaintiffs' counsel, as a result of "undisclosed actions of [Budgen's] former clients." They argue that none of the time Smith's firm spent "learning" the case (58.60 hours) should be compensated. Defendants contend that "[s]uch 'learning curve' time, which does not advance the case and was not a result of Defendant's actions, is not reasonably billed to a client or one's adversary." Doc. 223 n. 61 (citing *Lang v. Reedy Creek Improvement Dist.*, 1997 WL 809200 *5 (M.D. Fla. 1997)).

Although Smith concedes that "learning curve" time which does not advance the case is not recoverable, he argues that attorney time spent learning in this case is recoverable because, to find otherwise, would frustrate the intent of the FLSA fee-shifting provision. He also argues that to find otherwise would punish litigants for seeking substitute counsel and the attorneys who agree to accept an FLSA case where Plaintiff was previously represented. In this case, Plaintiffs' conduct and the controversy of their making – the lack of production of contemporaneous supporting time record

-12-

documents – were responsible for Mr. Budgen's withdrawal. The cost of Plaintiffs' conduct, which created the need for Mr. Smith's firm to get up to speed late in the case and with responses to dispositive motions due, should not be borne by Defendants. This 58.6 hours will be deducted.

Defendants also argue that the time spent by paralegals working on Plaintiffs' cases for "clerical" activities is also not reimbursable because such work is only recoverable if it is work that is traditionally performed by an attorney. Defendants argue that Budgen's firm is seeking approximately 20.6 hours in unrecoverable clerical time, while Smith's firm is seeking 39 hours. Budgen argues from an efficiency standpoint, many tasks in his small firm must be delegated to a competent paralegal because he does not have "the time or budget to micromanage the use of untrained assistants" thus, he must use competent paralegals.

Smith argues that the work completed by paralegals at his firm was not clerical, and included: drafting correspondence to opposing counsel regarding avoiding summary judgment or discussing settlement negotiations, drafting correspondence to Plaintiffs and opposing counsel making sure to provide and obtain appropriate discovery, drafting correspondence to Plaintiffs regarding pending mediation and trial, gathering facts, and organizing documents to assist with depositions and document production. Doc. 229 at 8.

The Court has awarded and encouraged attorney's use of paralegals for certain routine tasks in FLSA cases in the past, and such time is generally recoverable, especially in the typical FLSA case such as this one. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (reasonable attorney's fee should include paralegal time and that the use of lower cost paralegals rather than attorneys encourages cost-effective delivery of legal services).

Defendants also argue that Plaintiffs cannot recover fees for time Mr. Smith spent on an unsuccessful Motion to Dismiss Defendants' counterclaims. Mr. Budgen had previously agreed to Defendants' filing of the Motion, the counterclaims had been pending for *eighteen* months, and Plaintiffs had already filed their answers, so they were procedurally barred from moving to dismiss.

*See* Doc. 135. Smith does not contest deduction of this time in the Reply. Accordingly, hours of time spent on the unsuccessful Motion to Dismiss will be deducted.

Defendants argue that Plaintiffs should not recover for services which Defendants characterize as "simply taking too long to perform," such as the excessive hours of time spent by Smith's firm preparing for and attending mediation. Defendants fail to specify the amount of the "excessive" hours for mediation preparation or discuss why they were excessive; there will be no reduction on that basis.

Defendants also argue that the 41.40 hours sought by Smith's firm for researching and preparing Plaintiffs' second motion for attorneys' fees "is clearly excessive" in light of the record before this Court. Defendants compare the 21.4 hours in Smith's first fee petition[9], filed on November 29, 2011 after the parties had settled the claims of four of the Sixteen Plaintiffs[10], to the instant Motion seeking 20 additional hours even though, Defendants argue, the two Motions are nearly identical in form and substance. Defendants argue that Plaintiffs are not entitled to collect "double fees" for work done on such substantially similar petitions.

Smith argues that, although the two pleadings involve some of the same facts, parties, and legal issues, the two pleadings are far from identical because they contain different case law, arguments, and required different strategy and research. Defendants do concede that the "second Smith petition does include some unique facts that occurred after the filing of Smith's first petition," but argues that "they are not lengthy nor do they add much by way of substance." Moreover, Smith's second petition was filed after the remaining 12 Plaintiffs settled their claims, which required revisions to the initial Motion. Smith also was granted leave to file a ten-page Reply in August 2012 and that time is not included, though it has served to clarify issues for the Court's review.

---

[9] The first Motion for Fees was denied without prejudice subject to renewal in a comprehensive motion covering the fees for all Plaintiffs.

[10] Graciela Everest, Andrew Sugrim, Johanna Cardile, and Jorge Pereira.

Defendants also argue that Plaintiffs cannot recover fees for time Mr. Smith spent on their unsuccessful Motion to Dismiss Defendants' counterclaims, when Mr. Budgen had previously agreed to Defendants' filing of the Motion, the counterclaims had been pending for *eighteen* months, and they were procedurally barred from moving to dismiss because Plaintiffs had already filed their answers. *See* Doc. 135. Time spent on this Motion to Dismiss will be deducted.

Defendants argue that they should not be required to pay for the time Mr. Smith spent on behalf of Plaintiffs responding to Motions for Sanctions filed by Defendants and granted by the Court. Defendants moved for sanctions for certain Plaintiffs' failure to attend mediation; attend a mandatory status conference; and, produce key documents relevant to this case. Defendants contend that 17.2 hours[11] from Smith's firm should be deducted based time spent due to Plaintiffs' obstructionist conduct. Smith does not respond to this particular point in the Reply. Under the circumstances of this case, given the conduct of certain Plaintiffs during the course of discovery and leading to Mr. Budgen's withdrawal, such time is not compensable.

Defendants contend that there is also other unrecoverable time that they have noted in Plaintiff's time entries marked on the exhibit they supplied, but "due to page limitations" they do not discuss these individual entries. Doc. 223-3. The Court does not intend to sift through nearly 900 time entries to determine which time is "otherwise unreasonable" that the Court has not already dealt with in some other category. Defendants could have sought a page limitation extension and they did not. To the extent they advance arguments as to a general category of "unrecoverable time," those arguments are not specific and will be denied on that basis. *See Gray v. Lockheed Aeronautical Systems Co.*, 125 F.3d 1387 (11th Cir. 1997) (A fee opponent's failure to explain with specificity the particular hours he views as unnecessary or duplicative is generally fatal).

---

[11]Defendants cite the entries by Smith's firm dated 4/4/2011 (.4), 4/15/2011 (.3 + .3 + .4), 8/16/2011 (6.0); and entries by RWS on 8/5/2011 for attending second deposition of Briera (2.9); see also multiple entries by RWS on 7/18/2011 for attending second depositions of Peterson (3.6) and Singer (3.3). Doc. 223 at n.23.

## SUMMARY OF REDUCTIONS

| Categories of reduction | Budgen Time | Smith time | Total Reduction |
|---|---:|---:|---:|
| Budgen withdrawal (conceded) | 7.3[12] | 0 | 7.3 |
| Unfiled Amended Complaint (conceded) | 0 | 26.4 | 26.4 |
| Time on Santana claim (conceded) | 2.0 | 0 | 2.0 |
| Dismissal motion (no reply) | 0 | 2.8 | 2.8 |
| Duplicative entries (conceded) | 2.2 | 0 | 2.2 |
| Redundant time spent "learning" case | 0 | 58.6 | 58.6 |
| Responding to sanctions motions/repeat depositions (granted) | 0 | 17.1 | 17.1 |
| Extensions of time (no reply) | 0 | 1.5 | 1.5 |
| Boyd bankruptcy (no reply) | 0 | 2.0 | 2.0 |
| **Total** | **11.5** | **108.4** | **119.9** |

Of the total hours requested collectively, 884.6 hours, the Court will subtract 108.4 hours from Mr. Smith's time entries and 11.5 hours from Mr. Budgen's.

The revised hours awarded (at the uncontested rates) are as follows:

| Attorney/Paralegal | Hours | Rate | Fees |
|---|---:|---:|---:|
| L. Todd Budgen, Esq. | 30.2 | $275 | $8,305 |
| Senior paralegal | 3.5 | $105 | $368 |
| Paralegal (Budgen) | 61 | $95 | $5,795 |
| Richard W. Smith, Esq. | 245 | $275 | $67,375 |
| Stephanie B. Preston, Esq. | 41.8 | $275 | $11,495 |
| Eric R. Elms, Esq. | 121.6 | $150 | $18,240 |
| Joseph R. Coker, Esq. | 1.7 | $150 | $255 |
| Michael M. Brownlee, Esq. | 8.10 | $150 | $1,215 |
| Paralegals (3- Smith) | 251.6 | $95 | $23,902 |
| **Total** | **764.5** | | **$136,950** |

---

[12]Some of the time is paralegal time (3.1 hours).

It is respectfully **RECOMMENDED** that Plaintiffs be awarded attorney's fees of **$136,950** on the Sixteen Plaintiffs' settlements totaling $151,000.

## III. COSTS

Plaintiffs seek to recover a total of $16,767.12 in costs: $11,521.33 (Smith[13]); and $5,245.79 (Budgen). As set forth in the chart below, Plaintiffs seek to recover the following costs:

|                        | Budgen     | Smith      |
|------------------------|-----------|-----------|
| Filing Fees            | $247.86   | $0.00     |
| Service of Process     | $63.75    | $0.00     |
| Depositions (Budgen)   | $81.43    | $7,731.00 |
| Copy/Reproduction Fees | $4,852.75 | $3,790.30 |
| **Total**              | **$5,245.79** | **$11,521.30** |

Docs 216, 218.

A prevailing party may recover costs as a matter of course unless otherwise directed by the Court or applicable statute. *See* Fed.R.Civ.P. 54(d)(1). Congress has delineated which costs are recoverable under Federal Rule of Civil Procedure 54(d). *See* 28 U.S.C. § 1920[14]. The parties previously agreed as part of the Sixteen Plaintiffs' settlement agreements to allow the Court to determine Plaintiffs' recoverable costs.

Defendants argue that Plaintiffs' costs must be reduced to only those costs authorized under 28 U.S.C. § 1920, and objects to $2,095.90 of the $3,790.30 in photocopying costs sought by Smith's firm for "copies of Plaintiffs' documents to be produced per discovery requests" based on the presumption that the responding party bears the expense of complying with discovery requests unless the responding party can show good cause as to why the expense should be shifted. Doc. 223 (citing

---

[13]Smith's Reply reduced the amount sought by $3,114, which is the cost of making copies of deposition exhibits, obtaining condensed transcripts and ASCII disks, conceding such costs are not recoverable. Doc. 229 at 9-10.

[14]Title 28 U.S.C. § 1920 provides that the Court may tax the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. 28 U.S.C. § 1920.

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)).  Defendants also argue that the $4,852.75 in costs sought by Budgen for printing *and* scanning[15] are largely duplicative and, therefore, only about half of these costs are recoverable.

Smith and Budgen argue that Plaintiffs' copying costs are recoverable under 28 U.S.C. § 1920(4).  While Defendants argue that the Court should not allow reimbursement for copies made merely for "counsel's convenience," Mr. Budgen points out that the scanning was not done merely for "convenience" but was necessary due to the way Defendants kept and chose to produce Plaintiff's reconstructed time records.  The scanning was required to have a manageable method to work with the records and calculate the amount of overtime due.  Moreover, Judge Honeywell has previously allowed copying *and* scanning costs against the very same Defendants.  See Doc. 348, *Andriello v. CFI Sales & Marketing, Inc.*, Case No. 6:09-cv-208-Orl-35GJK (M.D. Fla. Aug. 10, 2012) (Honeywell, J.).

The Court has the discretion to award those costs specifically enumerated in 28 U.S.C. § 1920.  *See Crawford*, 482 U.S. at 440-44.  The Court may not tax as costs any items not included in 28 U.S.C. § 1920.  *Id.*; *see also Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460 (11th Cir.1996).

## CONCLUSION

It is respectfully **RECOMMENDED** that the Sixteen Plaintiffs' Motions for Attorney's Fees and Costs (Docs. 216, 218) be **GRANTED** in part and they be awarded attorney's fees of **$136,950** and **$16,767.12** in costs as set forth above.

---

[15] Doc. 218-1 at 21.  According to the Excel spreadsheet attached to Budgen's Motion, Budgen is seeking to recover 25 cents per page for both scanning and printing the following documents: (1) Defendants' second supplemental disclosure (5,215 documents x 2); (2) Defendants' third supplemental disclosures (400 documents x 2); (3) "additional" documents provided by Defendants (284 documents x 2); and (4) Plaintiffs' responses to Discovery (306 documents x 2).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 18, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy